————o————

58  475
42a 679

JOHN W. OWNBY, Appellant, *vs.* DAVID A. ELY, Respondent.

1. *Assignments—Inventories—Conveyances—Trusts.*—Where A., as assignee, took possession of an interest in property which had passed to him by the assignment, and without having the property inventoried and appraised, or procuring an order of court for its sale, sold the same for $100, and then, in two or three days thereafter, re-purchased it from his vendee by quit-claim, for the expressed consideration of $400, and then procured the whole title from the person who owned the other interest, claiming it all as his own, and did not account for the proceeds of the sale on his settlement ; *Held,* that the transaction was fraudulent, *per se,* and that the assignee would be declared a trustee for the assignor or whoever was entitled to his interest.

2. *Interest.*—Six per cent. interest only can be allowed, except where a different rate is contracted for between the parties or fixed by the statute.

*Appeal from Macon Circuit Court.*

*Harrington & Cover, with D. S. Hooper,* for Appellant.

I. It was the duty of Ely to file an inventory of the property under oath, which came into his hands. (W. S., 151-2, §§ 2, 3.)

II. The ruling of the court below makes Ownby pay what Ely loses by his fraudulent acts. (Allen vs. Berry, 50 Mo., 90.)

*Ellison & Ellison,* for Respondent.

WAGNER, Judge, delivered the opinion of the court

This was a proceeding in the nature of a bill in equity, the object of which was to declare a trust upon certain real estate, and have the defendant held as a trustee for the plaintiff.

The petition alleged that in 1866 plaintiff and one Lee purchased of I. B. Dodson the land in question, and paid for the same, and that Dodson executed and delivered to them a warranty deed therefor ; that in 1867, plaintiff having been sheriff and collector of Adair County, became defaulter to the county and State, and, desiring to secure the indebted-

ness; he made a voluntary assignment to the defendant of all his property both real and personal, including his interest in the land in controversy.; that defendant accepted the trust, but, through fraud, designedly failed and neglected to have the property inventoried and appraised as required by law; that in furtherance of this fraud, on the 27th day of June, 1868, he made a pretended sale of plaintiff's interest in the land, without having it inventoried or appraised, and without obtaining an order of court authorizing him so to do, to one Brown, for the sum of one hundred dollars, when the property, at the time, was worth two thousand dollars; that he executed to Brown a deed for the land, and in two days thereafter received a quit-claim deed from Brown to himself for the said land for the consideration of four hundred dollars; that at the same time defendant and Dodson were colluding and confederating together to obtain from Lee the deed Dodson had made and delivered to plaintiff and Lee, which deed had never been put upon record, and, after the same was secured, they refused to deliver it to the plaintiff, and that the defendant agreed to pay Dodson one-half of the value of the land, if he would make him a warranty deed to all the land, which Dodson did, accordingly, on the same day that Brown made his deed to the defendant, and that defendant recorded both of the deeds and claimed the land as his own; that afterwards, at the May Term, 1869, of the Adair County Circuit Court, defendant, as assignee of the plaintiff, made a final settlement, and was discharged by the court, without accounting for the property, and that he refuses to convey the same to the plaintiff. The answer denied all the allegations stated in the bill, and averred that defendant bought the property in good faith, and that he applied the proceeds to the benefit of plaintiff's creditors.

These averments were denied in a replication.

From the record introduced in the matters of the proceedings in the assignment, it appears, that the defendant did not inventory or appraise the property, nor did he procure an order of court directing it to be sold. Although the statute re-

quires all these things to be done, (Wagn. Stat., 151-2, §§ 2, 3; *Id.*, 156, § 34,) yet their omission by the assignee could not destroy the rights of the creditors under the assignment. The power to sell and convey without an order of court might not exist, but that would not affect the trust upon the property, if the question was raised by the creditors or those who were lawfully entitled thereto. But there are no creditors here either presenting or contesting any claim.

The evidence in the case shows, that Lee purchased the land, in conjunction with the plaintiff, from Dodson for the sum of six hundred dollars, and received a general warranty deed therefor. The interest of Lee was one-half, and of the plaintiff the other half. Lee kept the deed in his possession about one year, and never put it on record; he then sold his interest back to Dodson, and delivered to him the deed he had received to himself and plaintiff, instead of making to him a conveyance for his half.

The facts clearly show that plaintiff paid all the consideration money but about fifty dollars (forty-nine is the sum found by the court), and this balance was afterwards paid by the defendant. The testimony of Dodson is explicit, that, in the sale of the land to defendant, although he made him a general warranty deed to the whole, yet he did not pretend to own more than one-half, and had no claims on the interest of the plaintiff. The facts of the sale, as stated in the petition, by defendant to Brown, and a re-sale and conveyance back by Brown to defendant, were clearly proved and are undisputed. There is a conflict in the testimony in reference to plaintiff's declarations concerning the land; Dodson testifies that, when he bought back Lee's interest, plaintiff agreed that the deed might be cancelled, and that he would have nothing more to do with it, that he wanted the defendant to take whatever interest he had and apply it for the benefit of his creditors. Defendant swears that plaintiff told him the title was in Dodson, and that he would have nothing more to do with it. But this testimony is directly contradicted by witnesses on the other side, and, to say the least, is unsatisfactory. The

uncontradicted facts are, that, at the original purchase by Lee from Dodson, all the purchase money, six hundred dollars, was paid by Lee. Plaintiff then paid Lee two hundred and fifty dollars on his half, leaving a balance of fifty dollars unpaid, which was due, not to Dodson, but to Lee. It would be a little strange and quite incomprehensible to see how the plaintiff would agree to an entire cancellation of the deed and an utter destruction of his interest, when he had paid the greater proportion of the consideration.

It is evident, that the defendant recognized the plaintiff's claim when he paid the remaining fifty dollars to quiet the title. Moreover, he sold the property as the plaintiff's property, and that was the only authority he had for selling at all. . The settlement made by defendant, as assignee, shows that he did not account for the money proceeding from the sale of the land to Brown, nor in anywise mention it.

Although no bad faith may be directly proved against the defendant in the matter of the sale and purchase of the land, still public policy will not uphold such a transaction. He was acting in a fiduciary capacity. A trust was devolved on him requiring fair dealing with the plaintiff on one side and the creditors on the other. The property was sold by him for one hundred dollars, when the proofs show that plaintiff's interest was worth from seven hundred and fifty to one thousand dollars, and immediately thereafter, defendant buys it back for four hundred dollars, and then goes to Dodson, the original source of title, and procures a general warranty deed for the whole tract, when Dodson knew that he was conveying what did not belong to him. To permit such a course of procedure to prevail, would be giving unlimited license to fraud. Not that every such case would necessarily be fraudulent, but it would furnish an inducement and temptation, which the wisest policy is to utterly prohibit.

The decree cannot be sustained upon any principle. It adjudges that plaintiff shall pay to the defendant the sum of four hundred dollars, which was, by defendant, paid to Brown when he purchased the land, together with ten per cent. in-

terest thereon from the date of the purchase till paid; also that plaintiff shall pay to defendant the sum of forty-nine dollars, amount of payment of purchase to Lee, with ten per cent. interest, all of which sums are to be paid within ninety days from the rendition of the decree, and that upon the payment of the amounts above specified, then defendant was to stand seized of one undivided half of the land for the use and benefit of the county of Adair and the State.

There is no law in this State for the allowance of ten per cent. interest, except on written contracts where the parties have agreed upon that rate. In all other cases, except where special provision is made in the statute, where interest is given, six per cent. only can be charged. Plaintiff could not be made responsible for the four hundred dollars paid by defendant to Brown for the purchase of the property on the re-sale back to him. Defendant's whole transaction in that regard was illegal, and he took upon himself all the risk. The only thing, which plaintiff was in anywise liable to account for, was the fifty dollars paid to complete the title. That inured directly to his benefit, and justice would demand that he should compensate the defendant for it. The balance of the decree is not justified by any issue made in the pleadings.

There was nothing to authorize the holding that the defendant should stand seized to the use and benefit of the county and State. No such issue was raised in the cause. Whether it would be proper would depend on circumstances, the evidence of which the record does not disclose. If the plaintiff has satisfied the indebtedness for which the assignment was made, then the property should be returned to him. If not, his creditors, for whom the assignment was executed, may still, by a proper proceeding, subject the same to their claims. But they were not before the court, and the defendant had been discharged and had no power to act, indeed he did not attempt anything of the kind.

The judgment should be reversed and the cause remanded; the other judges concur.