JOHN W. SHOTWELL, Appellant, v. GILBERT MUNROE, Respondent.

42  669
42  664

St. Louis Court of Appeals, December 23, 1890.

1. **Estoppel.** Property was levied upon and sold under an execution. Subsequently, another judgment was obtained against the same debtor, and assigned, and, under an execution issued thereon, in favor of the assignee, said property was again levied upon. *Held* that such assignee was not estopped from disputing the validity of said sale if his assignor was not, and that this was so, though he had derived a collateral and incidental benefit from said sale, as where the proceeds of the sale served to satisfy the first judgment, and, thereby, his liability as a surety on a note of the judgment debtor was extinguished.

2. **Payment:** ACCEPTANCE OF NOTE. *Held, arguendo,* that when a promissory note is taken for a debt, whether it be the note of the debtor or a third person, the acceptance of it does not constitute a payment of the debt, unless the creditor expressly agreed to accept it as such payment.

3. **Validity of Purchase by Sheriff of Property Sold Under an Execution.** If property sold under an execution be purchased on behalf of a number of persons, of whom the sheriff making the sale is one, such sale is void.

*Appeal from the Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*D. A. Ball* and *J. D. Hostetter,* for appellant.

The court erred in permitting defendant to read in evidence the original execution, issued on the Haden judgment, and the various returns of the sheriff thereon. The only purpose it could subserve was a tendency to show that the issuance of the *alias* execution thereafter, and the sale thereunder, was irregular and invalid. This, we contend, could not be done by S. P. Griffith,

because he had assented to this sale, instructed his attorney to release his mortgage in order to aid such sale, and had the Haden debt, for which he was jointly liable with Carter, paid off with the proceeds, and he cannot afterwards be heard to attack the validity of such sale. *Austin v. Loring*, 63 Mo. 19; *Slagel v. Murdock*, 65 Mo. 522; *Fenwick v. Wheatley*, 23 Mo. App. 641. ( 2 ) Instruction number 5 should have been given. Griffith stands in the relation of a creditor to Carter, but, having assented to the sale for the express purpose of allowing the stock to bring something to apply on the debt for which he and Carter were jointly liable, he is estopped now from attacking the purchaser's title, and more especially is he estopped if there was no agreement between Carter and Shotwell as to the buying in of said stock for Carter's benefit, as is predicated in the instructions refused. *Fenwick v. Wheatley*, 23 Mo. App. 641, and cases cited. ( 3 ) Instruction number 1, given by the court for defendant, was misleading, and there was no evidence on which to base the same. "It must be considered as the settled law in this state that the acceptance of a note, to amount to payment, must be expressly agreed to be taken in payment by the parties." *Commiskey v. McPike*, 20 Mo. App. 83; *Bank to use v. Peterman*, 21 Mo. App. 512. Now, there is no evidence whatever that Haden took the note in payment of his debt. On the contrary, the proof is that he took it as a mere security, and that he surrendered it at the sale, thus leaving said instruction without any testimony whatever to rest on.

*Robinson & Farrell*, for respondent.

( 1 ) The original execution in the case of Haden v. Carter, and the return thereon, were properly admitted in evidence. This execution, and the sheriff's return thereon, were a part of the record in that case. Freeman on Executions, sec. 363; *Ferguson v. Tutt*, 8 Kan. 370;

*Gardner v. Hosmer*, 6 Mass. 325. The plaintiff in this case, claiming under an *alias* execution in the case of Haden *v.* Carter, is bound by the record in that case. At least, it is competent evidence against him. Freeman on Executions, sec. 363. The original execution, and the sheriff's return thereon tended to show satisfaction of the judgment, and, consequently, were both competent and relevant. If the first execution was satisfied, the *alias* was issued without authority, and the sale thereunder was a nullity. *McClure v. Logan*, 59 Mo. 234; *Durette v. Briggs*, 47 Mo. 356; *Weston v. Clark*, 37 Mo. 568. (2) Instruction number 5 was properly refused. There was no evidence on which to base any claim of estoppel. (3) There was ample evidence to sustain the giving of instruction number 1. But, if there was not, it is immaterial. That instruction only went to show the validity of the sheriff's sale, and said sale was invalid for another reason. It was made by Fielder, as sheriff, and Fielder, himself, together with the plaintiff and others, became purchasers. A sheriff cannot purchase at his own sale. *Ownby v. Eby*, 58 Mo. 475; Crocker on Sheriff, sec. 486; 4 Kent's Com., side page 438. A third person uniting in a purchase with a sheriff is under the same disability as the sheriff. *Mitchum v. Mitchum*, 3 Dana, 260; *Steam Co. v. Cum., C. & I. Co.*, 16 Md. 466; *Cum., C. & I. Co. v. Sherman*, 30 Barb. 553.

ROMBAUER, P. J.—John B. Haden obtained a judgment against A. H. Carter in the year 1886 for six hundred and sixty-one dollars and thirty-one cents. An execution on the judgment was levied on Carter's property, on which the sheriff collected eighty-six dollars and eighty-one cents in cash, and, for the residue, Carter as principal and one Griffith as his security executed their note to Haden. The sheriff thereupon returned the execution showing these facts, and subsequently by the consent of Carter and Haden amended

his return, stating that, out of the eighty-six dollars and eighty-one cents paid to him by Carter, he applied twenty dollars towards payment of costs and sixty-six dollars and eighty-one cents towards payment of debt, and that for the residue of six hundred dollars Carter as principal and Griffith as security, executed their note to Haden, whereupon, by order of plaintiff's attorney, he released the levy. The return concludes: "Whether the six-hundred-dollar note, above mentioned, was accepted by plaintiff as payment, and in satisfaction of said judgment I do not undertake to decide in this return."

Thereupon an *alias* execution was issued against Carter on said judgment, which the sheriff (John Fielder) levied on a stallion named "Fox Hunter," a yearling stallion named "Don," and other stock of the defendant Carter. Before sale under the levy, Shotwell, the plaintiff in the present proceeding, agreed with five others, *of whom the sheriff was one*, to buy in the stock at execution sale. Concerning the agreement and the parties to it there is no controversy. Plaintiff Shotwell claims that it was an agreement to buy in the stock on joint account as a speculation, and is, on that point, supported by the testimony of some of his associates in the venture. Carter and the defendant in the present proceeding claim that it was an agreement to buy it in for the benefit of Carter, and hold it in trust for him and resell it, and upon such resale to account to Carter for whatever surplus it would bring after payment of the execution, and the expenses connected with the keep and sale of the stock. They are supported in that view by the testimony of the sheriff and another of the associates. The parties entering into this agreement were friendly to Carter, who was or had been their pastor in the Campbellite church. They were all either members of the church, or connected with it. Shotwell bought in the stock in a lump under that agreement for the exact

amount of the execution and costs, and under circumstances which leave little room for doubt that he did so under a prearrangement with the sheriff that the stock should be knocked off to him. The stock was worth more than the execution debt, and the six associates executed their joint promissory note for the purpose of raising the money to pay for it. The money thus raised was used for the purpose of paying the execution, and incidentally to take up the six-hundred-dollar note executed by Carter and Griffith to Haden for the purpose of releasing the preceding levy.

The execution sale took place in August, 1887. In September, 1887, Shotwell obtained from his associates, including the *sheriff*, a relinquishment of their interest in the stock on condition that he should pay the note executed by all of them jointly. Ninety-seven days after the sheriff's sale, Shotwell sold the stallion, "Fox Hunter," for nine hundred and ninety dollars, which, according to his own evidence, was more than the amount of the note paid by him, and the expense of keeping all the stock until he disposed of it. He disposed of all the stock, with the exception of the young stallion, "Don," prior to the institution of the present suit.

The above statement is deemed essential to a clear understanding of the issues in the case at bar, which is an action of replevin, and which originated as follows:

One Chamberlain obtained a judgment against Carter in March, 1888, for eight hundred and forty-seven dollars, and at once assigned it to Griffith. In February, 1889, Griffith caused an execution to be issued on said judgment in the name of Chamberlain to his use, which the sheriff levied on the young stallion, "Don," claiming that it was Carter's property, although in the possession of Shotwell. Shotwell thereupon filed a claim under the statute, but the sheriff took an indemnifying bond, and refused to release the levy; whereupon the present

action was instituted by Shotwell against the sheriff, and such proceedings were had therein that, upon its trial before a jury, the defendant recovered a verdict and judgment. The plaintiff, appealing, complains that the court erred in admitting certain evidence against his objection, and misdirected the jury as to the law.

The admission of evidence, which is complained of, is that of the first execution in favor of Haden against Shotwell, and the sheriff's return thereon. The sole objection urged is that the defendant is estopped from setting up the invalidity of the second sale, because he claims under the judgment now held by Griffith as assignee of Chamberlain, and, as Griffith got the benefit of the proceeds of the second execution sale, in having the note paid, on which he was security for Carter, he cannot deny the validity of the sale made on the *alias* execution.

That a defendant in an execution cannot stand by at the sale, permit his property to be sold, receive the direct benefit of the proceeds, and then claim against the purchaser that the sale was invalid, has been decided in *Austin v. Loring*, 63 Mo. 19. On the same principle we held in *Fenwick v. Wheatley*, 23 Mo. App. 641, that, where two executions are in the sheriff's hands, and he makes a levy under both on certain lands, and a homestead is set apart on such levies, and the residue of the land is thereupon sold on one of the executions, but the proceeds of the sale are applied to the partial payment of the other likewise, the execution creditor who receives and retains such proceeds is thereby estopped from attacking the validity of the proceedings. But we are aware of no case, which goes to the extent of holding that one, who is in no sense a party to the record or execution sale, is estopped from attacking its validity, on the ground that he has derived some collateral and incidental benefit therefrom. Besides that, in this case, the sheriff holds under an execution in favor of Chamberlain, of whom

Griffith is the mere assignee, and there is not even a pretense of estoppel against Chamberlain as his claim did not ripen into a judgment until long after the execution sale on the Haden execution, and he had no connection whatever with that execution, nor had Griffith any such connection as far as the record discloses. The objection, therefore, is not well taken.

The court gave six instructions in favor of plaintiff out of thirteen instructions asked. We do not deem it necessary to set out more than four of these instructions for the purpose of showing that the court submitted the plaintiff's case to the jury under the most favorable view of the law admissible under the evidence. These instructions are as follows: •

"7. The court instructs the jury that, although they may believe from the evidence in the cause that all or a part of plaintiff's five partners in the purchase of the animals of A. H. Carter at execution sale had an understanding or agreement with said Carter, or some one for said Carter, that they were to buy said stock for his (Carter's) benefit, and turn back to him their proportionate share of the net profits of the purchase, still, if afterwards these five partners sold out their interest in said stock for a valuable consideration to plaintiff Shotwell, without informing him (Shotwell) of such an understanding and agreement with Carter, and that Shotwell was ignorant of such agreement, then said Shotwell was an innocent purchaser of their undivided five-sixths' interest, and became the absolute owner of the same, and your verdict must be for the plaintiff.

"8. The court instructs the jury that, if they believe from the evidence in the cause that Shotwell bought the property at execution sale without having an understanding with Carter or anyone for him to buy the same in trust for Carter, and if they further believe that he (Shotwell) afterwards bought out his five partners in the enterprise, then he (Shotwell) acquired an absolute title to the whole of said property, and this is

true, notwithstanding the jury may believe that some of Shotwell's five associates had an agreement with Carter to buy in such property in trust for him ( Carter ).

" 9.   The court instructs the jury that, if they believe from the evidence in the cause that plaintiff, together with his five associates, to-wit, Caldwell, Wenkle, Clark, Fielder and Ward, bought the horse in controversy at execution sale for a valuable consideration, with no understanding with Carter, or anyone for him, to hold said property in trust, and that afterwards plaintiff's five associates sold out their interest in said horse to plaintiff for a valuable consideration, then the plaintiff became the absolute owner of said horse and your verdict must be for plaintiff."

" 11.   The court instructs the jury that the taking of the six-hundred-dollar note by J. B. Haden, signed by A. H. Carter and S. P. Griffith, when the first execution was levied on Carter's stock, and the order to the sheriff by Haden of the release of said levy under said execution when said note was delivered to him, was not a payment of the judgment on which such execution was issued, and you are further instructed that, in order for the delivery of said six-hundred-dollar note to Haden to constitute a payment of said judgment, you must believe that said Haden expressly agreed to receive, and did receive, said note as a payment of his judgment.   And unless you do believe that said Haden expressly agreed to receive said note in payment of his judgment, then you are instructed that the *alias* execution, under which said property was afterwards sold, was valid, and the purchaser or purchasers themselves received an absolute title to the property."

At the request of the defendant the court gave four instructions, but as only one of them is complained of, we set that one out in full.   It is as follows :

" 1.   The court instructs the jury that, if they believe from the testimony in the cause that the plaintiff in the execution, Haden, or his attorney with his

knowledge and consent, accepted the note of Carter and Griffith, together with the money paid by them, and expressly agreed that said note and money was received in satisfaction of the first execution, then the sale under the second execution was void as to creditors, and the verdict will be for defendant, no matter whether Carter or his attorney assented to the said sale or not."

This instruction is complained of on the ground' that there is no evidence to support it. The law in this state is settled that the acceptance of a note, either of the debtor or of a third person, for a pre-existing debt is no payment, unless the creditor expressly agrees to take it as payment, and to run the risk of its being paid. *Commiskey v. McPike*, 20 Mo. App. 82 ; *Appleton v. Kennon*, 19 Mo. 637 ; *Leabo v. Goode*, 67 Mo. 126 ; *Riggs v. Goodrich*, 74 Mo. 108. If it is not payment, it is not *prima facie* evidence of payment. The sheriff's first return on the Haden execution, though relevant as an inducement to other evidence which would tend to show that the note therein mentioned was agreed to be taken in payment by Haden, and hence that the execution was satisfied, could not of itself amount to evidence of an express agreement to that effect, and does not even purport to do so. Is there any other evidence on the subject? Carter testified : " I *thought* the note was given in satisfaction of the judgment," but admits that he never had any such understanding with Haden, and had no talk with Haden about the note. Fielder, the sheriff, testified: " I saw Haden and Hostetter, Haden's attorney, and asked them if they would take the note, and they hesitated awhile, but finally said they would, and I then returned the execution as you see. Neither Haden nor Hostetter gave me any directions about how to return the execution. *I understood* that they took the note, in payment. Griffith was solvent at that time, but was not so good when the note became due. About the time when the note became due, Hostetter came to me and wanted me

to alter the return, and I then made the return stating the facts, but saying I did not know whether the note was taken in satisfaction or not." Neither Carter nor the sheriff are cross-examined on the question of how they arrived at their understanding, and the sheriff's testimony admits of the inference that his understanding was derived from what Haden and Hostetter said. Neither Haden nor Hostetter were witnesses at the trial.

We have serious doubts whether, under this state of the evidence, we are warranted in disturbing the judgment on the sole ground that the instruction is not supported by substantial evidence, all the more so, as, in our opinion, a retrial of the cause must inevitably lead to the same result, owing to the conceded facts of the case.

It stands conceded that Fielder, the sheriff, was one of the purchasers at the execution sale under which the plaintiff claims. He made a joint note with the plaintiff to raise the purchase money, and the plaintiff himself, as part of his title, produces the release of Fielder's interest to him. According to the plaintiff's own evidence, he knew he was not buying at the execution sale for himself, but for himself and his associates, of whom the sheriff making the sale was one, and this fact is recognized in one of the plaintiff's own instructions above set out.

The statute provides ( R. S. 1879, sec. 2387; R. S. 1889, sec. 4949 ) : "No officer to whom any execution shall be directed, or any of his deputies, or any person for them, shall purchase any goods or chattels, real estate or other effects, or bid at any sale made by virtue of such execution, and all purchases so made shall be *void*." This provision is reiterated in the act relating to justices ( R. S. 1879, sec. 3021 ; R. S. 1889, sec. 6309), where the words used are *absolutely void*. These provisions are merely declaratory of the common law, resting on the soundest principles of public policy, which

prohibit any trustee from becoming directly or indirectly interested in a sale made by him.   As Judge WAGNER says in *Ownby v. Eby*, 58 Mo. 475: "Not that every such case would necessarily be fraudulent, but it would furnish an inducement and temptation, which the wisest policy is *to utterly prohibit.*"   The fact that the sheriff was the only one of six associate purchasers at the sale, cannot make any difference, as the sale was an entirety, and cannot be valid in part, and void in part. *Hoffman Steam Coal Co. v. Cumberland, etc., Co.,* 16 Md. 456, 462.

It results from the foregoing that the judgment in any view of the case was for the right party, and must be affirmed.   So ordered.   Judge THOMPSON concurs; Judge BIGGS does not sit in the case.