W. J. WOOLDRIDGE, RESPONDENT, v. TRUMAN B. HOPKINS, APPELLANT.

Kansas City Court of Appeals. January 11, 1926.

1.—Sales—Whether Defendant Bought and Agreed to Pay for Goods and Whether Plaintiff Sold and Extended Credit to Him for Them Held for Jury. Whether there was an original undertaking on defendant's part to buy and pay for goods, and whether defendant was party to whom plaintiff sold them or extended credit, held question for jury.

2.—Same—Manner in Which Goods Sold Were Charged or Account Kept on Plaintiff's Books Not Conclusive. Manner in which goods were charged or account kept on plaintiff's books held not conclusive of question as to whether defendant originally undertook to buy and pay for them and whether he was person to whom plaintiff sold them and extended credit.

3.—Same—Acceptance of Note Without Agreement to Take It as Payment Held Not to Extinguish Plaintiff's Right to Sue Defendant as Original Debtor. If plaintiff merely accepted note from defendant's son without any agreement to take it as payment of the account and to run the risk of note not being paid, then such acceptance did not extinguish his right to sue defendant as the original debtor.

### ON REHEARING.

4.—Appeal and Error—Appellate Court Will Not Invade Province of Jury as Triers of Fact. Appellate court will not invade province of jury as triers of fact, even though evidence may in its opinion strongly preponderate in favor of defendant.

**5.—Same—Where There Was no Exception to Remarks of Court, the Complaint in Reference Thereto Cannot be Considered.** In suit on account, statement of court that plaintiff's alleged acceptance of a payment on a note of defendant's son "had nothing to do with case" **held** not reviewable where there was no exception to remarks of court, but merely to ruling made on objection.

**6.—Same—To Obtain Reversal Burden is Upon Appellant to Show That Error Substantially Affected His Rights.** To obtain reversal the burden is upon appellant not only to show that court committed error, but that error substantially affected rights of appellant.

**7.—Appeal and Error—Error in Exclusion of Testimony as to Whom Credit Was Originally Extended Held Harmless.** Error in exclusion of testimony on question as to whom credit was originally extended, **held** harmless where jury already knew defendant contended that credit was extended to his son and not to him.

**8.—Election of Remedies—Plaintiff by Suing on Note Given on Account Held Not to Have Elected to Hold Son Where Credit Was Extended to Defendant.** In suit on account, where defense was that goods were sold and credit extended to son of defendant, plaintiff by bringing suit against son on note given on account, and pursuing suit to judgment, **held** plaintiff did not elect to hold son where credit was extended to defendant, and that giving of note by son constituted separate transaction and that note was not taken in payment of debt.

**9.—Same—Creditor May Sue Maker of Note Given on Account Without Electing to Release Original Debtor.** One may promise to pay a debt of another after it has been made and may give his note for that debt and be pursued thereon while at same time creditor intends to hold both the original debtor and giver of note.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 909, n. 81; 4CJ, p. 861, n. 24; p. 912, n. 77; p. 1004, n. 63; Election of Remedies, 20CJ, p. 8, n. 65; Payment, 30Cyc, p. 1197, n. 33; Sales, 35Cyc, p. 43, n. 85, 86; p. 44, n. 91; p. 269, n. 43, 44.

Appeal from the Circuit Court of Cole County.—Hon. Henry J. Westhues, Judge.

AFFIRMED.

*H. B. Shain* and *W. D. O'Bannon* for appellant.

*S. B. Jeffries, W. V. Draffen, A. E. Simpson* and *Paul F. Plummer* for respondent.

TRIMBLE, P. J.—This is a suit on an account for lumber and materials alleged to have been sold by plaintiff to defendant at the latter's request. The amount for which judgment was asked in the amended petition is $2544.30 with interest from January 24, 1919, the date of demand. The answer was a general denial. Trial was had, and on November 7, 1923, the jury returned a verdict for plaintiff in the sum of $3180.45. The defendant appealed.

His first contention is that the demurrer offered at the close of all the evidence should have been sustained. In order to understand this contention in all its details, it may be well to state that the lumber and materials sold, and of which the account is made up, were used in the construction of a house erected on the east portion of a 300-acre tract of land in which the defendant had a life estate and his son Carl had an undivided one-third interest subject to said life estate, the house erected being in fact for the use of Carl, and into which he and his family moved when it was complete, but there is no evidence to show that plaintiff knew this when the lumber was bought, or when, if ever, he ascertained it.

One basis for the demurrer is that the lumber and materials were not sold to the defendant but to his son Carl. It may be conceded at once that there is evidence in behalf of defendant tending to show that Carl, and not the defendant, bought the lumber; but on the other hand there is evidence in plaintiff's behalf tending to show that defendant himself bought it. This evidence is that before any of such materials were furnished, the defendant himself told plaintiff that he "wanted to build a nice house and wanted to get the lumber" for it. To which plaintiff agreed, and, in the course of the conversation, he remarked to defendant that the latter had "always been used to a big house." Shortly thereafter the son Carl came to the plaintiff's lumber-yard one morning and told plaintiff that his father wanted plaintiff to "come up and lay off a foundation for him." Plaintiff went and found defendant and his wife on the ground, and defendant told plaintiff that they had the plans for the house but were " 'loggerheaded' about where to put it," that plaintiff marked out or "squared off" the lines for the foundation, locating it just where defendant wanted it; the next day plaintiff was sent for again, and went, and defendant suggested and insisted that the house be made larger, whereupon the foundation lines were changed so as to make the house two feet longer, and the next morning after that plaintiff was again called back and made the lines still larger, the defendant being present and seeing and supervising the figures and changes plaintiff made; all the changes made were at the defendant's suggestion, except the one which placed the house a little further from the rod. This last-mentioned change was suggested by the defendant's wife. A few days after the foundation lines were thus located, plaintiff began furnishing the lumber, defendant's son Carl doing most of the hauling of the same from the lumber-yard to the site. He was a witness for defendant and admitted in his testimony that he made no inquiry of plaintiff as to the price of the lumber being obtained. nor did he anywhere deny that he told plaintiff his father wanted plaintiff to come up and lay off the foundation. His testimony,

given in the form of mere conclusions, is that *he* bought the lumber, *he* built the house and *he* owned and lived in it.

Plaintiff's evidence is further that defendant supervised the construction of the house and personally assisted in the work of building it. Defendant admits this but says he did it merely for the purpose of helping his son. It is admitted in defendant's brief that plaintiff testified that credit for the lumber and materials in question was extended by him to the father.

It is further urged by defendant that the plaintiff's books of account conclusively show that the goods were charged to Carl and that therefore there was no issue to go to the jury as to whom the goods were sold. The books show that they were charged in an account headed ''Hopkins'' with the word ''Carl'' to the right thereof and plaintiff testified that the account was against the defendant, but that the name ''Carl'' was thus placed there so as to keep the items going into the house separate from other purchases made by defendant for other purposes. The account against defendant attached to the petition and marked Exhibit A was an exact reproduction and list of the items of the account thus shown on the books.

From the foregoing, we think it is manifest that it was a question for the jury to say whether there was an original undertaking on defendant's part to buy and pay for the goods, and to whom the plaintiff sold them or extended credit for them. [Rubey Trust Co. v. Weidner, 174 Mo. 692, 696.] The manner in which the goods were charged or the account kept on plaintiff's books was not conclusive of that question. [Wittenberg v. Fisher, 183 Mo. App. 347, 351; 29 Am. & Eng. Ency. of Law (2 Ed.), 925; Galamba v. Harrisonville, etc., Co., 191 S. W. 1084, 1085; Bennett v. Robinson, 180 Mo. App. 56, 63.]

It is contended that no account against defendant was introduced in evidence, but this proceeds upon the theory that the account as shown on the books was conclusively one against the son and not against the father, which has hereinabove been disposed of. Besides, the plaintiff was his own bookkeeper and entered the items himself as they were delivered, and he went over the items personally and swore they were furnished and went into the construction of the house and that the prices charged therefor were reasonable. In addition, it seems conceded in the evidence offered in defendant's behalf that lumber and materials to the amount of the account in round numbers went into the house.

A further contention as to why the demurrer should have been sustained is that plaintiff accepted a note from Carl and his wife and mother in full payment of said account and that plaintiff brought suit thereon and thereby elected to pursue an inconsistent

remedy. This is based upon the fact that long after the accrual of the account, Carl, the son, voluntarily, so plaintiff testified, appeared at plaintiff's office and offered him the note which plaintiff took, and upon the further fact that at the bottom of the last page of the book account was written the words "By note in full." Plaintiff's evidence expressly denies that, in accepting the note thus brought to him by Carl, there was any agreement or understanding between them that the note was accepted in payment of said account. And the notation at the bottom of the last page of the account does not square or balance the account nor indicate in any way that the account was *paid* thereby or that nothing further was due thereon. The plaintiff testified that he made the notation merely to show that a note for the total of the account had been taken. If plaintiff merely accepted the note in question without any agreement to take it *as payment* of the account and to run the risk of the note not being paid, then such acceptance did not extinguish his right to still sue the defendant as the original debtor. [Chorn v. Zollinger, 143 Mo. App. 191, 195; Holland v. Rongey, 168 Mo. 16; Peoples Bank v. Stewart, 152 Mo. App. 314, 330; West Publishing Co. v. Corbett, 165 Mo. App. 7, 12.] And here is the thing that prevents the application of the invoked rule as to the election of inconsistent remedies. Plaintiff is not in the position of being obliged to sue only one of two or more persons, or to rely on one of two different and inconssitent causes of action. Not having accepted the note as *payment* of the account, he could still sue defendant on the account and Carl on the note; and until either was paid he could obtain judgment on both, though, of course, he would be entitled to but one satisfaction. [Reynolds, Receiver, v. Union Station Bank, 198 Mo. App. 323, 332; Steinbach v. Murphy, 143 Mo. App. 537, 539.] It follows from this that even if he did accept a payment of $100 on the note from Carl and credited said note with that amount, that would make no difference, nor would it matter whether judgment was obtained on the note or not, since plaintiff has never received satisfaction.

There was no error in plaintiff's instruction A for it required the jury to find, in addition to all the other necessary matters, that said account had not been paid, which would include payment by note or in any other way. And in defendant's given instruction No. 6, the jury were explicitly told that if the note was accepted as payment of the account, they must find for defendant.

It seems that by mistake in some way the amount recovered was $400 more than was due, including interest. This, plaintiff says in his brief, was cured by the entry of a remittitur of $400. The abstract of the record fails to show that such remittitur was made. However, defendant's counsel conceded in the oral argument that

such remittitur was entered. Such being the fact, the judgment is affirmed for the amount remaining after the deduction of such remittitur. The other judges concur.

## On Rehearing.

BLAND, J.—Plaintiff testified, before he produced his books in court, that the account was headed "Truman B. Hopkins" but he thought that the word "Carl" appeared in parenthesis after the word "Hopkins." When the books were introduced in evidence the words "Truman B." did not appear and instead of the word "Carl" following the word "Hopkins" being in parenthesis it was set off by comas. Another account appeared in plaintiff's book of accounts in the name of "Hopkins, T. B." Defendant claims that the evidence shows that all the accounts kept by plaintiff were kept in the same way, that is, that the surname of the debtor appeared first and the given name second. The record is not clear as to how the other accounts, other than the two accounts mentioned, were kept. Plaintiff was asked—

"Q. The *first* name that always appears would be the fellow's last name, Henry J. Caussfeld, you would put the name Caussfeld *last* in every case? A. I have been keeping books in that manner."

In view of the form of the question it is impossible to make heads or tails out of the answer of the witness.

We admit there is strong evidence in the record tending to show that the credit was originally extended to Carl Hopkins, as is now claimed by the defendant, and not Truman B. Hopkins. We are now asked to declare *as a matter of law* that the credit was not extended to the defendant. We think that all of the conflict in the testimony, real and apparent, was for the jury, and we are unwilling to invade the province of the jury, as the triers of the facts, even though the evidence may in our opinion strongly preponderate in defendant's favor.

It is claimed as throwing light upon the question as to whom the credit was extended, that defendant was entitled to show not only that plaintiff had accepted a payment upon the note from Carl but that a suit upon the note against Carl was brought and pursued to judgment. The showing that suit was pursued to judgment might possibly have had some bearing upon the question but the testimony was offered expressly as tending to throw light upon the issues of estoppel or the claimed election on the part of plaintiff to hold Carl instead of Truman. The court was asked to rule upon the evidence from this standpoint alone. In ruling upon the objection, the court stated that if plaintiff accepted the note, "it had nothing to do with this case and nothing with this defendant." It is insisted that this statement of the court in the presence of the jury

was prejudicial. There was no exception to the remarks of the court, the exception being merely to the ruling made upon the objection. Thereafter what was purported to be a judgment against Carl Hopkins upon the note was offered in evidence by the defendant.

The burden is upon defendant not only to show that the court committed error but that the error substantially affected the rights of the defendant. [Lower v. Coal & Mining Co., 142 Mo. App. 351.] Even had the testimony been offered on the question as to whom the credit was originally extended, we fail to see how the defendant could have been injured by the court's excluding it. The jury had already learned that the note had been taken and that a payment had been made and that a suit had been brought upon it. The necessary inference to be drawn from the filing of suit was that plaintiff was seeking judgment upon the note. The jury knew that plaintiff was pursuing Carl upon the note, that really was the matter that defendant was attempting to get before the jury; that is to say, that defendant accepted the note of Carl and had collected it in part and was attempting to collect the balance, thus tending to show that it was Carl's debt in the beginning.

It is still strenuously insisted that as a matter of law plaintiff cannot now pursue Truman for the reason that he elected to hold Carl by bringing suit against Carl and pursuing that suit to judgment. For the purpose of disposing of this point, we may assume that suit against Carl was pursued to judgment. We think that there are no inconsistent remedies involved. Of course, there is no claim that in the beginning Carl agreed to pay the debt of the defendant, the evidence tending to show that credit was extended to the defendant, and that Carl was not looked to at all. Afterwards when plaintiff was attempting to get settlement of the account he took the note of Carl. It is, therefore, claimed that either Carl or Truman was liable for the debt and that both of them could not be liable and that plaintiff having taken the note of Carl and sued Carl on the note and pursued the suit to judgment, he elected to hold Carl. The trouble is that defendant fails to distinguish between the two transactions, that is, the original one extending the credit to Truman and the second or the giving of the note by Carl after the credit was extended and materials furnished. The jury could have treated these, under the evidence, as two separate and distinct transactions. There is no question but that one may promise to pay a debt of another after it has been made and may give his note for that debt and be pursued thereon while at the same time the creditor intends to hold both the original debtor and the giver of the note. There is nothing inconsistent in this idea. It was stated in Chorn v. Zollinger, 143 Mo. App., 191, 195—

" 'The law in this State is settled that the acceptance of a note either of the debtor *or of a third person* for a pre-existing debt is no payment, unless the creditor expressly agrees to take it as payment and to run the risk of its being paid.' [Shotwell v. Munroe, 42 Mo. App. 669; State ex rel. v. Wagers, 47 Mo. App. 431; McMurray v. Taylor, 30 Mo. 263.]'' (Italics ours.)

As fully shown in the original opinion, there was ample evidence that the note was not taken in payment of the debt. We think there was no election of remedies in this case. The facts in this case are wholly unlike those in the case of Commercial Bank v. Central National Bank, 203 S. W. 662, and other like cases cited by the defendant.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.